OPINION
On January 18, 2001, the Licking County Grand Jury indicted appellant, Adam Hatchett, on one count of aggravated robbery in violation of R.C.2911.01. Said charge arose from a robbery in the apartment of Joseph and Jennifer Lambert.
A jury trial commenced on May 9, 2001. The jury found appellant guilty as charged. By judgment entry filed May 11, 2001, the trial court sentenced appellant to a determinate term of three years in prison.
Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I THE STATE OF OHIO FAILED TO ESTABLISH, BY PROOF BEYOND A REASONABLE DOUBT, THAT THE ALLEGED OFFENSE OCCURRED WITHIN THE VENUE OF THE TRIAL COURT.
 II THE FAILURE OF DEFENSE COUNSEL TO OBJECT TO PREJUDICIAL AND IMPROPER COMMENTS BY THE PROSECUTING ATTORNEY DENIED THE DEFENDANT-APPELLANT THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL.
 I
Appellant claims there is insufficient evidence to support his conviction because the state failed to prove the incident took place in Ohio. We disagree.
On review for sufficiency, our standard of review is as follows:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia
[1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)
 State v. Jenks (1981), 61 Ohio St.3d 259, paragraph two of the syllabus.
Appellant concedes there was evidence presented to establish the incident took place in Pataskala, Licking County, but argues the record did not establish that Pataskala or Licking County is in Ohio.
Venue is a necessary element to establish the jurisdiction of the trial court. R.C. 2901.12 governs venue. Subsections (A) and (G) state as follows:
 The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed.
 When it appears beyond a reasonable doubt that an offense or any element of an offense was committed in any of two or more jurisdictions, but it cannot reasonably be determined in which jurisdiction the offense or element was committed, the offender may be tried in any of those jurisdictions.
In reviewing this issue, we are permitted to look at the entire record of the trial. Jennifer Lambert testified on January 5, 2001, the date in question, she and her husband were moving from Village Gate Building 105, Apartment 107, Pataskala, Licking County, to their new residence in Pataskala, Ohio. T. at 59-61, 70. The incident took place at the Village Gate Apartments. T. at 61. The City of Pataskala Police Department investigated the incident. T. at 108. Officer Randall Thompson testified he investigated the incident on behalf of the City of Pataskala Police Department which is located in Pataskala, Ohio. T. at 107-108. Officer Thompson testified the Village Gate Apartments were in his police jurisdiction, Pataskala, Licking County. T. at 108-109. Officer Michael Boals also testified the apartment complex was within his jurisdiction, the City of Pataskala, Ohio. T. at 121-123. Appellant's own witness testified Pataskala was in Ohio. T. at 144.
From the totality of the evidence presented, we find there was sufficient credible evidence to establish that Pataskala and Licking County are in Ohio.
Further, pursuant to Evid.R. 201(B), the issue of whether Pataskala and Licking County are in Ohio is clearly an adjudicative fact subject to judicial notice:
 A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonable be questioned.
When the trial court denied appellant's motion for acquittal at the close of the state's case, the trial court's taking of judicial notice of an adjudicative fact was appropriate.[1]
Assignment of Error I is denied.
 II
Appellant claims he was denied the effective assistance of trial counsel because his trial counsel failed to object to prosecutorial statements made during closing argument. Appellant claims the statements were prejudicial and improper.
The standard this issue must be measured against is set out in Statev. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, certiorari denied (1990), 497 U.S. 1011. Appellant must establish the following:
 Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; Strickland v. Washington [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
 To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.
The complained of statements were made on rebuttal and are as follows:
 As I said earlier, you have to make your decision based on the evidence you heard from the witness box, but you also have to use your common sense. And common sense requires that you consider what you didn't hear as well.
* * *
 Where's Stephanie Coe, his girlfriend who was there? You didn't hear from her. You didn't hear from a lot of other people, too. Melissa Smith; you didn't hear from John Hector; his girlfriend, Jean. You didn't hear from James McLendon. You didn't hear from Amy Poindexter.
 Of course, as I said earlier, you didn't hear from Stephanie Coe, you didn't hear from Perry Hector. And the reason you didn't hear from those people is because what you were told by Bill Vanover and Adam Hatchett is not true. And those people weren't here because they can't or won't verify that. That's why they're not here.
 I told you in — in — during opening statements that one of the most important jobs that you have as a juror is to determine the credibility of witnesses, who you believe, who do you not believe. The State has proven, beyond a reasonable doubt, that Adam Hatchett committed the crime of Aggravated Robbery; the only way you can find otherwise is if you find that Joe Lambert and Jennifer Lambert are bold face liars. That is simply not true.
T. at 192-193.
The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused.State v. Lott (1990), 51 Ohio St.3d 160, certiorari denied (1990),112 L.Ed.2d 596. In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. Darden v. Wainwright (1986), 477 U.S. 168.
Appellant argues these comments violated Crim.R. 16(C)(3) which states "[t]he fact that a witness' name is on a list furnished under subsection (C)(1)(c), and that the witness is not called shall not be commented upon at the trial." Appellant argues his trial counsel was deficient in not objecting to the statements. The "no comment" rule of Crim.R. 16 applies only if witnesses have been disclosed pursuant to Crim.R. 16(C)(1). Pursuant to a discovery disclosure filed April 11, 2001, appellant named the following witnesses pursuant to Crim.R. 16(C)(1)(c): Melissa Smith, William Vanover, James McLendon and Amy Poindexter. Only William Vanover and appellant testified at trial.
Clearly on rebuttal the prosecutor mentioned individuals named on the discovery list along with several other individuals, Stephanie Coe, Perry Hector, John Hector and his girlfriend Jean.[2] However, the record also substantiates that appellant's trial counsel invited the comment and also explained the comment:
 Now, the State of Ohio presumably is going to argue to you that because Adam visited several other individuals on that night, why aren't they here? Why aren't they here to tell ya, yeah, they stopped by, we had beers? Frankly, it is irrelevant whether or not they are here. All that occurred, according to Adam, after this robbery had already occurred. So, their necessity for being here is nonexistent. It simply wasn't important for them to be here. The only important witness to be here was Adam, and he told you what happened; and Bill, because that is where Adam was at the time this occurred.
T. at 188.
In addition, appellant's trial counsel directly called into question the credibility of the Lamberts:
 Now, I asked you also to witness the demeanor of the individuals who testified. And if you will recall, Mrs. Lambert had such a hard time on the stand because of how shaken up she was over this incident. As I told you in opening statements, we don't deny that a robbery took place at 107 Village Gate Drive, in Apartment 105. What we contest, obviously, is the fact that Adam Hatchett committed that Aggravated Robbery. And I would submit that as evidence, by Mrs. Lambert's obvious emotional turmoil today, compounding that at the time of the offense it is hard to understand or hard to assess exactly how much she does remember and how well she does remember it. If you remember, she contradicts her own husband's testimony in what happened immediately following the exit of these three individuals.
* * *
 Now, let's talk about Mr. Lambert's testimony. Mr. Lambert denied being a marijuana dealer, yet we have heard testimony from the police that he was suspected of that. He kept large quantities of cash in his house instead of a bank. He had problems remembering the sequence of event and how they occurred. And, again, he knows Adam Hatchett.
T. at 184-185.
 Mr. Schoren made comments about the credibility of witnesses. The State already explained to you how you judge credibility. You are going to have to decide amongst yourselves while you are in that jury room who you believe, whether you believe Mr. and Mrs. Lambert, whether you believe Adam Hatchett and Bill Vanover. He will also tell you, you don't have to believe anybody, and you don't.
T. at 189.
The defense of this case had to rest upon the credibility of the complaining witnesses and because of that fact, the credibility and believability of the Lamberts versus appellant and Mr. Vanover was critical. Appellant's trial counsel specifically addressed the missing witnesses and explained them in the closing argument. T. at 188. The prosecutor's comments were in direct rebuttal to the statements made by appellant's trial counsel.
Given the nature of the case and the posturing of the closing arguments, we cannot find that appellant's trial counsel was deficient in not objecting to the complained of comments or that the comments unduly prejudiced the outcome of the trial.
Assignment of Error II is denied.
JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Licking County, Ohio is affirmed.
Hon. Julie A. Edwards, P.J. Hon. William B. Hoffman, J. Hon. Sheila G. Farmer, J. concur.
[1] The Crim.R. 29 motion was not made on the issue of venue.
[2] Melissa Smith was mentioned by the investigating officers as a person they had talked to during the investigation, but she refused to talk to them. T. at 130-133.